UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

In re Lyondell Chemical Co., et al.,

                 Debtors.

-------------------------------------------------------------X

Case No. 09 Civ. 8316 (AKH)

Chapter 11

Bankr. Case No. 09-10023 (REG)
(Jointly Administered)

## MEMORANDUM IN SUPPORT OF MOTION FOR WITHDRAWAL OF THE REFERENCE PURSUANT TO 28 U.S.C. § 157(d)

PREET BHARARA
United States Attorney for the
Southern District of New York
JEANNETTE A. VARGAS
BRANDON COWART
ALICIA SIMMONS
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2678
Facsimile: (212) 637-2702

*Attorney for the United States of America*

KEN ALEX
Senior Assistant Attorney General
MARGARITA PADILLA
(admitted *pro hac vice*)
Supervising Deputy Attorney General
1515 Clay Street,
20th Floor P.O. Box 70550
Oakland, California 94612
Telephone:(510) 622-2135
Facsimile:(510) 622-2270

*Attorneys for the California Department of Toxic Substances Control*

EDMUND G. BROWN JR,
Attorney General of the State of California
RICHARD MAGASIN,
Supervising Deputy Attorney General
MARILYN H. LEVIN
(admitted *pro hac vice*)
NOAH GOLDEN-KRASNER
(admitted *pro hac vice*)
Deputy Attorneys General
300 South Spring Street, 11th Floor
Los Angeles, California 90013
Telephone:(213) 897-2614
Facsimile:(213) 897-2802

*Attorneys for California State Water Resources Control Board and California Regional Water Quality Control Board, Los Angeles Region*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ..........................................................................................................5

    A.    The Chapter 11 Proceeding and the Proofs of Claim ..............................5

    B.    CERCLA....................................................................................................7

    C.    Discharge of "Claims" Under the Bankruptcy Code ...............................9

    D.    The Debtors' Objections ........................................................................11

ARGUMENT...............................................................................................................12

POINT I.    THE DEBTORS' OBJECTIONS ARE SUBJECT TO MANDATORY
        WITHDRAWAL OF THE REFERENCE TO THE DISTRICT COURT ..........12

    A.    Proceedings that Require Substantial and Material Consideration of
        CERCLA and Other Federal Environmental Statutes Must Be Withdrawn
        to the District Court ...............................................................................13

    B.    Resolution of the Debtors' Objections Requires a Significant Interpretation
        of CERCLA ...........................................................................................15

        1.    Disagreement Between the Parties As To the Applicability of the
            Second Circuit's *Chateaugay* Decision .....................................17

        2.    Application of *Chateaugay*'s "Ongoing Pollution" Test Requires
            Substantial Consideration of Substantive Environmental Law ................21

        3.    Adjudication of the Debtors' Objections Will Require Consideration
            of Whether the Objections are Barred by CERCLA's Ban on Pre-
            enforcement Review ...................................................................22

    C.    Resolution of the Debtors' Objections Would Require Addressing
        Questions of First Impression as to Whether There Is a "Right of
        Payment" under Federal Environmental Statutes Other than CERCLA ..............25

    D.    Resolution of the Debtors' Objections Requires Consideration of the
        Competing Objectives of Environmental and Bankruptcy Law ..........................26

i

POINT II.    THIS COURT SHOULD WITHDRAW THE REFERENCE
             AS A MATTER OF DISCRETION ........................................................................28

CONCLUSION.................................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

<u>AM International, Inc. v. Datacard Corp.</u>,
106 F.3d 1342 (7th Cir. 1997) ................................................................................10

<u>B.F. Goodrich Co. v. Murtha</u>,
697 F. Supp. 89 (D. Conn. 1988).............................................................................22

<u>B.F. Goodrich Co. v. Murtha</u>,
958 F.2d 1192 (2d Cir. 1992)..........................................................................8, 22, 26

<u>Bear Stearns Sec. Corp. v. Gredd</u>,
No. 01-CV-4379, 2001 WL 840187 (S.D.N.Y. July 25, 2001) ............................19, 21

<u>Broward Gardens Tenants Association v. EPA</u>,
311 F.3d 1066 (11th Cir. 2002) ...............................................................................24

<u>In re Burger Boys, Inc.</u>,
94 F.3d at 762 .........................................................................................................30

<u>In re Cablevision S.A.</u>,
315 B.R. 818 (S.D.N.Y. 2004).................................................................................14

<u>In re Chateaugay Corp.</u>,
944 F.2d at 997 ................................................................................................ passim

<u>In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.</u>,
3 F.3d 200 (7th Cir. 1993) ........................................................................................4

<u>Clinton County Comm'rs v. EPA</u>,
116 F.3d 1018 (3d Cir. 1997)...................................................................................24

<u>In re Combustion Equipment Associate</u>,
838 F.2d 35 (2d Cir. 1988).......................................................................................27

<u>In re Combustion Equipment Associates, Inc.</u>,
67 B.R. 709 (S.D.N.Y. 1986)...................................................................13, 14, 15, 27

<u>Costner v. URS Consultants</u>,
153 F.3d 667 (8th Cir. 1998) ....................................................................................24

<u>In re Dana</u>,
379 B.R. 449 (S.D.N.Y. 2007)................................................................15, 16, 26, 27

In re Davis,
    3 F.3d 113 (5th Cir. 1993) ..................................................................................10

Farmers Against Irresponsible Remediation (FAIR) v. EPA,
    165 F. Supp. 2d 253 (N.D.N.Y. 2001)...........................................................23

Hodel v. Virginia Surface Mining & Reclamation Associate,
    452 U.S. 264 (1981).............................................................................................14

In re Horizon Air, Inc.,
    156 B.R. 369 (N.D.N.Y. 1993)...........................................................................26

ILCO,
    48 B.R. at 1021 ....................................................................................14, 15, 26

ILCO,
    48 B.R. at 1020 ...................................................................................................16

In re Jensen,
    995 F.2d 925 (9th. Cir. 1993) ....................................................................3, 4, 9

Johnson v. Home State Bank,
    501 U.S. 78 (1991)..............................................................................................11

Key Tronic Corp. v. United States,
    511 U.S. 809 (1994)..............................................................................................7

In re Lion Capital Group,
    63 B.R. 199 (S.D.N.Y. 1985)..............................................................................15

In re Lyondell Chemical Co., et al.,
    No. 06-10036 (REG)............................................................................................2

Midlantic National Bank v. New Jersey Department of Environmental Prot.,
    474 U.S. 494 (1986)..............................................................................................4

Mishkin v. Ageloff,
    220 B.R. 784 (S.D.N.Y.1998)............................................................................29

National Gypsum Co.,
    134 B.R. 188 (N.D. Tex. 1991)..........................................................................26

In re National Gypsum Co.,
    139 B.R. 397 (N.D. Tex. 1992)............................................................................4

Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
    458 U.S. 50 (1982) ...................................................................................................... 12

Ohio v. Kovacs,
    469 U.S. 274 (1985) .................................................................................................. 4, 9

In re Orion Pictures Corp.,
    4 F.3d 1095 (2d Cir. 1993) ...................................................................................... 28, 30

In re Parmalat Finanziaria S.p.A.,
    320 B.R. 46 (S.D.N.Y. 2005) ......................................................................................... 29

Schalk v. Reilly,
    900 F.2d 1091 (7th Cir. 1990) ....................................................................................... 24

Shugrue v. Air Line Pilots Association (In re Ionosphere Clubs, Inc.),
    922 F.2d 984 (2d Cir. 1990) .......................................................................................... 29

State of New York v. Shore Realty Corp.,
    759 F.2d 1032 (2d Cir. 1985) ........................................................................................... 9

In re Torwico Electronics, Inc.,
    8 F.3d 146 (3d Cir. 1993) .......................................................................... 10, 17, 19, 20

In re Udell,
    18 F.3d 403 (7th Cir. 1994) ........................................................................................... 10

United States v. Apex Oil Co., Inc.,
    No. 08-3433, 2009 WL 2591545 (7th Cir. Aug. 25, 2009) ...................... 17, 20, 25, 26

United States v. Bestfoods,
    524 U.S. 51 (1998) ...................................................................................................... 7, 9

United States v. Conservation Chemical Co.,
    619 F. Supp. 162 (W.D. Mo. 1985) ............................................................................... 22

United States v. Delfasco, Inc.,
    409 B.R. 704 (D. Del. 2009) .......................................................................................... 16

United States v. E.I. du Pont de Nemours & Co., Inc.,
    341 F. Supp. 2d 215 (W.D.N.Y. 2004) .......................................................................... 22

United States v. ILCO,
    88 B.R. 581 (S.D.N.Y. 1988) ......................................................................................... 14

## Statutes

11 U.S.C. § 101(5) ............................................................................................ passim

11 U.S.C. § 1141(d)(1)(A) ...............................................................................2, 10

28 U.S.C. § 157 ............................................................................................1, 5, 12, 13

28 U.S.C. § 157(a) ..........................................................................................12

28 U.S.C. § 157(b) ..........................................................................................12

28 U.S.C. § 157(c) ..........................................................................................12

28 U.S.C. § 157(c)(1) .......................................................................................29

28 U.S.C. § 157(d) ...........................................................................13, 14, 16, 19

28 U.S.C. § 1334(a) ........................................................................................12

33 U.S.C. §§ 1251-1387), ................................................................................25

42 U.S.C. § 4601(14) ......................................................................................22

42 U.S.C. § 4606(a) ........................................................................................21

42 U.S.C. §§ 6901-6992k), .........................................................................5, 25

42 U.S.C. § 6973 ............................................................................................20

42 U.S.C. §§ 7401-7671q), .........................................................................5, 25

42 U.S.C. § 9506(a) .........................................................................................9

42 U.S.C. 9604 ...............................................................................................9

42 U.S.C. § 9605(a) .........................................................................................7

42 U.S.C. § 9606(a) ........................................................................................18

42 U.S.C. § 9607(a) .........................................................................................8

42 U.S.C. § 9607(a)(1) ......................................................................................9

42 U.S.C. § 9613(h) ...................................................................................23, 24

42 U.S.C. § 9613(j)(i) .................................................................................................22

42 U.S.C. § 9617..........................................................................................................8

Bankruptcy Amendments and Federal Judgeship Act of 1984,
    Pub. L. No. 98-353, 98 Stat. 333 (1984)....................................................................12

Cal. Health & Safety Code §25310....................................................................................9

Cal. Health & Safety Code § 25100 *et seq.* ....................................................................25

Cal. Wat. Code §§ 13000 *et seq.* ................................................................................3, 25

Clean Air Act,
    42 U.S.C. §§ 7401-7671q ....................................................................................5, 25

Comprehensive Environmental Response, Compensation and Liability
Act of 1980 ("CERCLA"),
    42 U.S.C. § 9601 *et seq.*........................................................................................ passim

Resource Conservation and Recovery Act,
    42 U.S.C. §§ 6901-6992k ("RCRA")....................................................................5, 25

## Rules & Regulations

40 C.F.R. 300.430(a)(ii)(A) ..........................................................................................8

40 C.F.R. 300.430(f)...................................................................................................8

55 Fed. Reg. 866, 8703 (1990) ......................................................................................8

The United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), by its attorney Preet Bharara, United States Attorney for the Southern District of New York, and the California Department of Toxic Substances Control ("DTSC"), the California State Water Resources Control Board and the California Regional Water Quality Control Board, Los Angeles Region ("Water Boards") (collectively the "California Environmental Agencies"), respectfully submit this joint memorandum of law in support of their motion for withdrawal to the District Court of (1) the Debtors' Objection Pursuant to Rule 502 of the Bankruptcy Code to Certain Claims of the United States of America, (2) the Debtors' Objection Pursuant to Rule 502 of the Bankruptcy Code to Certain Claims of the California State Water Resources Control Board, (3) the Debtors' Objection Pursuant to Rule 502 of the Bankruptcy Code to Certain Claims of the California Regional Water Quality Board, and (4) the Debtors' Objection Pursuant to Rule 502 of the Bankruptcy Code to Certain Claims of the California Department of Toxic Substances Control (collectively, the "Debtors' Objections") filed in *In re Lyondell Chemical Co., et al.,* No. 06-10036 (REG).[1]

## PRELIMINARY STATEMENT

The mandatory withdrawal provision of 28 U.S.C. § 157(d) requires a district court to withdraw the reference if the district court "determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Here, the issues raised in the Debtors' Objections require substantial and material consideration of a complex federal environmental statute,

---

[1] All exhibits ("Ex.") are attached to the Declaration of Brandon H. Cowart ("Cowart Decl."), dated September 30, 2009, submitted herewith. Exhibits A-C are the Debtors' Objections and accompanying papers. Exhibits D-F are proofs of claim filed by the United States and the California Environmental Agencies.

namely, the Comprehensive Environmental Response, Compensation, and Liability Act

("CERCLA"), 42 U.S.C. §§ 9601 *et seq.,* which regulates organizations or activities affecting

interstate commerce, as well as other federal environmental statutes, and similar state statutes.

Accordingly, the reference to the United States Bankruptcy Court for the Southern District of

New York (the "Bankruptcy Court") should be withdrawn.

The Debtors, part of a worldwide petrochemical manufacturing enterprise, currently are

required, by virtue of administrative orders and judicial injunctions issued by EPA, and state

agencies and courts, to cleanup hazardous waste at sites around the country. The Debtors do not

dispute that the hazardous substances they released into the environment pose an imminent and

substantial endangerment to public health and safety; that the Debtors' cleanup obligations arise

by virtue of federal environmental law and similar state laws; and that the cleanup orders for

certain of these sites were properly issued under CERCLA and similar state laws. The Debtors

nonetheless seek to impair the United States and the California Environmental Agencies from

exercising their police and regulatory authority to enforce the environmental laws by

preemptively seeking an order from the Bankruptcy Court effectively "discharging" them from

compliance with these environmental injunctive obligations. Specifically, the Debtors argue that

these injunctive obligations are "claims" within the meaning of section 101(5) of the Bankruptcy

Code, and are therefore subject to discharge under the section 1141(d) of the Code.

The premise of the Debtors' argument is that their legal obligation to ameliorate ongoing

threats to the public health and safety depend upon where their hazardous waste is located. The

Debtors do not dispute that they must comply with cleanup orders involving waste on property

they own or operate. If their hazardous waste has been dumped or otherwise released onto a

third party site, however, the Debtors contend that the United States and the California

2

Environmental Agencies are precluded from requiring the Debtors to comply with their obligations under federal and state environmental laws, regardless of the continuing hazards posed to public health and safety.

In advancing this argument, the Debtors rely upon an interpretation of CERCLA that runs contrary to well-established Second Circuit precedent. Specifically, the Second Circuit held in *In re Chateaugay Corp.*, that CERCLA injunctions to ameliorate continuing pollution are not "claims" subject to discharge in bankruptcy, as CERCLA does not give the EPA a right to accept "payment" in lieu of performance. 944 F.2d 997, 1007 (2d Cir. 1991).[2] Despite the clear import of this ruling, the Debtors advance a novel yet flawed interpretation of CERCLA's various enforcement provisions, which they claim requires limiting the scope of the *Chateaugay* decision to debtor-owned property. The Debtors' reading of CERCLA and the *Chateaugay* decision should ultimately be rejected. Still, however a court decides this issue, there can be no dispute that a decision requires engaging in substantial and material consideration of the relevant CERCLA provisions. Congress has commanded that such interpretations of non-bankruptcy law must be performed by the district court in the first instance.

Additionally, the court adjudicating the Debtors' Objections must construe the relevant CERCLA provisions to determine, *inter alia*, what standards should be used in determining if there is "ongoing pollution" within the meaning of *Chateaugay*; and whether CERCLA's jurisdictional bar with respect to actions that could interfere with EPA's pre-enforcement activity precludes the Debtors' attempt to preemptively discharge their injunctive obligations for sites at

---

[2] The ruling in *Chateaugay* should apply with equal force to cleanup orders issued pursuant to the counterpart state statutes, the Hazardous Substances Account Act (HSAA), Cal. Health & Safety Code section 25300 et seq., and the Porter-Cologne Water Quality Control Act (Porter-Cologne Act), Cal. Wat. Code section 13000 et. seq., as these statutory schemes are similar to CERCLA. *See, e.g., In re Jensen*, 995 F.2d 925, 927, n.4 (9th. Cir. 1993).

which the EPA has yet to take any enforcement action whatsoever. Because the substantive law

to be applied to both of these dispositive inquiries is rooted in CERCLA, or similar state laws,

and not the Bankruptcy Code, withdrawal of the reference is required under well-settled law.

Finally, to the extent that the Debtors are not jurisdictionally barred from adjudicating the

discharge of their obligations at sites subject to regulation under federal environmental statutes

other than CERCLA, the court will need to construe such statutes to determine if a breach of the

Debtors' injunctive obligations gives rise to a "right to payment" within the meaning of section

101(5) of the Bankruptcy Code.

In resolving each of these issues, the Court will face a potential conflict between

environmental law's policy of having polluters remediate contaminated property and bankruptcy

law's policy of giving debtors a fresh start. The "tension between these fundamental aspects of

our national policy is profound. The Supreme Court has indicated that, if possible, these two

conflicting objectives should be reconciled." *In re Chicago, Milwaukee, St. Paul & Pacific R.R.*

*Co.*, 3 F.3d 200, 201 (7th Cir. 1993) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl.*

*Prot.*, 474 U.S. 494, 505-06 (1986)); *Ohio v. Kovacs*, 469 U.S. 274, 280-82 (1985)); *see also In*

*re Jensen*, 995 F.2d 925, 927 (9th Cir. 1993) (recognizing the obligation of the courts to

reconcile the conflicting objectives of environmental law and bankruptcy law); *In re National*

*Gypsum Co.,* 139 B.R. 397, 404 (N.D. Tex. 1992) (holding that the pivotal question is not

whether a given environmental statute or the bankruptcy code is "accorded primacy over the

other, but rather what interaction between the two statutes serves most faithfully the policy

objectives embodied in the two separate enactments of Congress."). The reconciliation of the

conflicting goals of bankruptcy and environmental law should be undertaken by a district court

since it will inevitably require the substantial and material consideration of each body of law.

4

Thus, under the mandatory withdrawal provisions of 28 U.S.C. § 157(d), issues relating to the Debtors' Objections must be withdrawn to the district court.

## **BACKGROUND**

### A.    The Chapter 11 Proceeding and the Proofs of Claim

Lyondell is the third largest chemical manufacturer in the United States. On January 6, 2009, Lyondell and 78 affiliated entities filed chapter 11 petitions in the Southern District of New York. An additional 15 debtor entities filed chapter 11 petitions during April and May 2009. Thereafter, in July 2009, the United States timely filed nine Proofs of Claim asserting liabilities in connection with 22 sites and facilities, including liabilities for response costs, natural resource damages, and civil penalties under the Clean Air Act, 42 U.S.C. §§ 7401-7671q, the Resource Conservation and Recovery Act (42 U.S.C. §§ 6901-6992k) ("RCRA"), and CERCLA.

On July 6, 2009, DTSC filed a proof of claim against Debtor MHC, Inc. and Millenium Holdings LLC ("MHLLC"), with respect to their respective environmental liabilities at three sites in California: the Jefferson New Middle School No. 1 Site, the Syntex Site, and the Hillview Porter Site. On July 2, 2009, the State Board and the Los Angeles Regional Board each filed protective proofs of claim against eight Debtors with respect to the former Weber Aircraft Facility located in Burbank, California.

Each of the proofs of claims filed by the United States and the California Environmental Agencies contains an explicit reservation of rights with respect to the Debtors' injunctive obligations. For example, the United States included the following language in each proof of claim:

> The United States is not required to file a proof of claim with respect to [the debtor's] injunctive obligation to comply with work requirements imposed by environmental statutes, regulations, court orders, administrative orders, or permits, because such obligations are not claims under 11 U.S.C. § 10 1(5). [Debtor] and any reorganized debtor must comply with such mandatory requirements. The United States reserves the right to take future actions to enforce any such obligations of [Debtor]. While the United States believes that its position will be upheld by the Court, the United States has included the aforementioned obligations and requirements in this Proof of Claim in a protective fashion, to safeguard against the possibility that [Debtor] will contend that it does not need to comply with such obligations and requirements, and the Court finds that it is not required to do so. Therefore, a protective contingent claim is filed in the alternative for such obligations and requirements but only in the event that the Court finds that such obligations and requirements are dischargeable claims under 11 U.S.C. § 101(5), rather than obligations and requirements that any reorganized debtor must comply with. Nothing in this Proof of Claim constitutes a waiver of any rights of the United States or an election of remedies with respect to such rights and obligations.

Ex. D., ¶ 48.

Similarly, DTSC's proofs of claim each state: "DTSC [] contends that Debtor's obligations under a [Consent Order entered into by the Debtor with DTSC or enforcement orders] are not claims subject to discharge in bankruptcy." Ex. E at 2.

The State Board and the Los Angeles Regional Board likewise included a reservation of rights:

> The filing of these Proofs of Claim and Supplemental Statement is intended to cover any and all "claims" as defined in 11 U.S.C. § 101(5) arising from the Lyondell Debtors' activities, as a protective measure related to the obligations of the Lyondell Debtors and is also intended to cover other obligations, including injunctive obligations and administrative priority expenses which are not "claims" as defined in the Bankruptcy Code . . . As such, the Los Angeles Regional Board [and State Board] reserves the right to take future actions to enforce obligations of the Lyondell Debtors pursuant to state and federal laws, including Water Code sections 13304, 13385 and 13386. While the Los Angeles

6

> Regional Board [and State Board] believes that this position will
> be upheld by a court of competent jurisdiction, the Los Angeles
> Regional Board [and State Board] files these Proofs of Claim with
> respect to the Lyondell Debtors' obligations in a protective fashion
> with respect to such obligations and requirements should the
> Debtor[s] contend that such obligations are claims under section
> 101(5)(A) of the Bankruptcy Code and there is a final court order
> upholding that position.

Ex. F. at 5, 6-7.

Since the petition date, the Debtors have ceased performing under existing consent

decrees and enforcement orders at all third-party sites, *i.e.,* sites not owned or operated by the

Debtors. *See* Ex. A, Memorandum in Support of Debtors' Objection to Proofs of Claim Filed by

the United States of America and California Government Agencies on Issue of Classification of

Environmental Injunctive Relief Obligations as Dischargeable "Claims" Under the Bankruptcy

Code ("Debtors' Mem."), Docket # 2697, at 9.  Since the commencement of these Chapter 11

proceedings, neither the United States nor the California Environmental Agencies have initiated

any civil suits or other enforcement actions to require any of the Debtors to comply with federal

or state environmental laws at any non-Debtor owned site.

### B.    CERCLA

Congress enacted the Comprehensive Environmental Response, Compensation and

Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, as a response to the serious

environmental and health dangers posed by property contaminated by hazardous substances.

*United States v. Bestfoods*, 524 U.S. 51, 55 (1998).  CERCLA "grants the President broad power

to command government agencies and private parties to clean up hazardous waste sites." *Key*

*Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994).  Pursuant to CERCLA section 105(a),

42 U.S.C. § 9605(a), the EPA promulgates the National Priorities List ("NPL"), which identifies

the most serious hazardous waste sites identified for possible long-term remedial action.  *See*

40 C.F.R. Pt. 300, app. B. For sites on the NPL, the EPA performs detailed studies — each of which is called a remedial investigation and feasibility study ("RI/FS") — to ascertain the full extent of the contamination and to explore and evaluate remedial alternatives. *See* 40 C.F.R. 300.430(f). Following the conclusion of these studies, and a public input process, the EPA selects a remedial action to be implemented at the site, as documented in a Record of Decision ("ROD"). *See* 42 U.S.C. § 9617; 40 C.F.R. 300.430(a)(2).

Hazardous sites may be divided into phases or "Operable Units," with certain remedial actions selected for each Operable Unit as an incremental step toward comprehensively addressing the site problems. *See* 40 C.F.R. 300.430(a)(ii)(A)-(B). The EPA may also approve "interim" remedial action consisting of initial measures that are expected to advance the cleanup process and can be implemented while the remedial investigation and feasibility study is being completed and a final ROD issued, in which case the interim measure may become part of the final remedial action at the site. *Id.*; *see also* 55 Fed. Reg. 866, 8703 (1990) (preamble to the National Oil and Hazardous Substance Pollution Contingency Plan).

In addition to broad response authority, CERCLA creates broad liability, reflecting the principle that those responsible for creating hazardous conditions should bear the burden of cleanup. *See B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1198 (2d Cir. 1992). CERCLA identifies four categories of liable parties or "covered persons"— sometimes referred to as "potentially responsible parties" or "PRPs" — associated with the release or threatened release of hazardous substances. 42 U.S.C. § 9607(a). Those entities are: (1) owners and operators of facilities at which hazardous substances are located; (2) past owners and operators of such facilities at the time hazardous substances were disposed; (3) persons who arranged for disposal

or treatment of hazardous substances; and (4) certain transporters of hazardous substances to the site. 42 U.S.C. § 9607(a)(1)-(4).[3]

CERCLA contains several distinct enforcement provisions. For instance, section 106 of CERCLA authorizes the EPA to seek injunctive relief or issue administrative orders to abate "an actual or threatened release of a hazardous substance from a facility" where there "may be an imminent and substantial endangerment to the public health or welfare of the environment." 42 U.S.C. § 9506(a). Separate provisions of CERCLA authorize the EPA itself to undertake response actions designed to remove hazardous substances and provide appropriate remediation, using the Hazardous Substance Superfund. *See* 42 U.S.C. § 9604; *see also Bestfoods*, 524 U.S. at 55. The United States is authorized to recover its response costs from PRPs through a cost recovery action under section 107(a) of CERCLA. *See* 42 U.S.C. § 9607(a). The injunctive relief and monetary recovery provisions of CERCLA are distinct remedies. *Cf. State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1049 (2d Cir. 1985) ("The standard for seeking abatement under section [106] is more narrow than the standard of liability under section [107].").[4]

## C.    Discharge of "Claims" Under the Bankruptcy Code

When Congress enacted the current version of the Bankruptcy Code in 1978, it specifically provided that the concepts of bankruptcy discharge and the attending "fresh start," while broad and important, did have some limitations that were equally important. One of those limitations was the proviso that the Code's concept of monetary claim and discharge would not apply to certain kinds of equitable remedies. *See Ohio v. Kovacs*, 469 U.S. at 278-85. More

---

[3] The HSAA uses the same definitions as CERCLA. *See* Cal. Health & Safety Code §25310.

[4] The HSAA and Porter-Cologne Act are similarly structured with separate injunctive enforcement and cost recovery provisions. *See In re Jensen*, 995 F.2d at 927.

specifically, Congress dictated that where non-bankruptcy law provides an equitable remedy for

performance and recognizes no alternative right to payment for a breach of performance, the

equitable remedy survives bankruptcy. *See* 11 U.S.C. § 101(5)(B); *see also In re Udell*, 18 F.3d

403, 406-10 (7th Cir. 1994); *AM Int'l, Inc. v. Datacard Corp.*, 106 F.3d 1342, 1348 (7th Cir.

1997). Congress thus protected holders of such important rights to equitable remedies and

decreed that they would not be forced to accept suboptimal monetary recoveries. *See Udell*, 18

F.3d at 405, 408-10; *In re Davis*, 3 F.3d 113, 116 (5th Cir. 1993). This limitation applies to

injunctive obligations issued to potentially responsible parties to remedy hazardous waste sites.

*See, e.g., In re Torwico Electronics, Inc.*, 8 F.3d 146, 151 n.6 (3d Cir. 1993) (the debtor's

injunctive obligation was not a dischargeable claim because the debtor "had no option to pay for

the right to allow its wastes to continue to seep into the environment").

These limitations apply to the Bankruptcy Code provisions at issue here involving the

discharge of a debtor's "claims." The definitions section of the Bankruptcy Code provides that:

"claim" means –

> (A) right to payment, whether or not such right is reduced to
> judgment, liquidated, unliquidated, fixed, contingent, matured,
> unmatured, disputed, undisputed, legal, equitable, secured, or
> unsecured; or (B) *right to an equitable remedy for breach of*
> *performance if such breach gives rise to a right to payment*,
> whether or not such right to an equitable remedy is reduced to
> judgment, fixed, contingent, matured, unmatured, disputed,
> undisputed, secured, or unsecured;

11 U.S.C. § 101(5) (emphasis added). A "claim" relates to the discharge of a debtor's liabilities

in this way: A Chapter 11 bankruptcy confirmation order "discharges the debtor from any *debt*

that arose before the date of such confirmation," subject to certain exceptions not relevant here.

11 U.S.C. § 1141(d)(1)(A) (emphasis added). The resulting discharge "operates as an injunction

against the commencement or continuation of an action, the employment of process, or an act, to

collect, recover or offset any such *debt* as a personal liability of the debtor." *Id.* § 524(a)(2)

(emphasis added). A "debt" means "liability on a claim." *Id.* § 101(12). The terms "debt" and

"claim" are coextensive; "[h]ence, a discharge under the Code extinguishes the debtor's personal

liability on his creditor's claims." *Johnson v. Home State Bank*, 501 U.S. 78, 85 n.5 (1991).

### D.    The Debtors' Objections

On September 4, 2009, the Debtors filed the Objections to the proofs of claim filed by the

United States and the California Environmental Agencies (collectively, the "Proofs of Claim").

Although styled as objections to specified proofs of claim, the relief the Debtors seek is much

broader. In reality, the Debtors seek "an order clarifying a threshold question of law raised

expressly by the Proofs of Claim filed by [the United States and the California Environmental

Agencies]: whether injunctive obligations under various federal and California state statutes to

perform work at environmental sites neither owned nor operated by the Debtors constitute

'claims' as defined in 11 U.S.C. § 101(5)," such that those injunctive obligations are

dischargeable in bankruptcy. Debtors' Mem. at 2. The Debtors assert that they may have

injunctive obligations under various federal and state environmental statutes at numerous non-

Debtor owned sites nationwide. *Id.* at 5. The Debtors contend that the scope of their motion

extends to "injunctive relief obligations at the third party sites, including (a) obligations arising

under existing agency decrees and orders at [the third party sites specifically referenced in the

Proofs of Claim], and (b) more generally, all injunctive relief obligations that the United States

may decide to enforce in the future." *Id.* at 11. Accordingly, despite being styled as an objection

to claims, the Debtors essentially are seeking declaratory relief about whether injunctive orders

issued to them under CERCLA and similar state laws to remedy ongoing pollution at non-Debtor

owned sites are dischargeable "claims" under the Bankruptcy Code.

**ARGUMENT**

## I.    THE DEBTORS' OBJECTIONS ARE SUBJECT TO MANDATORY WITHDRAWAL OF THE REFERENCE TO THE DISTRICT COURT

In 1982, the Supreme Court held unconstitutional the broad grant of jurisdiction to

bankruptcy judges contained in the Bankruptcy Act of 1978, which included the authority to hear

and finally determine all bankruptcy-related matters. *See Northern Pipeline Constr. Co. v.

Marathon Pipe Line Co.*, 458 U.S. 50 (1982).  Congress reacted by enacting the Bankruptcy

Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (1984).

Section 104 of the Act created 28 U.S.C. § 157, which defines the relationship between

bankruptcy courts and district courts.

Despite the fact that district courts have "original and exclusive jurisdiction of all cases

under title 11," 28 U.S.C. § 1334(a), a district court may "refer[] to the bankruptcy judges for the

district" any or all bankruptcy cases.  28 U.S.C. § 157(a).  Since 1984, all bankruptcy cases in

this district have been referred to the bankruptcy courts.  *See* Standing Order of Referral of Cases

to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated

July 10, 1984 (Ward, Acting C.J.).

Once a case has been referred to the bankruptcy court, the extent to which that court may

"finally determine" a matter depends on the case.  A bankruptcy judge can "hear and determine"

cases "under" title 11 as well as so-called "core proceedings."  28 U.S.C. § 157(b).  But, absent

the parties' consent, a bankruptcy judge may only submit proposed findings of fact and

conclusion of law in non-core proceedings, which are to be reviewed *de novo* by a district judge.

*See* 28 U.S.C. § 157(c).

Finally, the district court may always withdraw the reference of a case (or part of a case)

to the bankruptcy court and re-assert its exclusive jurisdiction:

> The district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court *shall*, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphases supplied). The two sentences of section 157(d) are read separately, and are generally referred to as, respectively, the "permissive" and the "mandatory" withdrawal provisions. "A motion for withdrawal of a case or proceeding shall be heard by a district judge." Fed. R. Bankr. P. 5011(a). *See id.*

### A.    Proceedings that Require Substantial and Material Consideration of CERCLA and Other Federal Environmental Statutes Must Be Withdrawn to the District Court

Courts in this District have consistently held that the "shall" language in 28 U.S.C. § 157(d) imposes a mandatory condition on district courts. For example, in *In re Combustion Equipment Associates, Inc.*, 67 B.R. 709, 711 (S.D.N.Y. 1986), the district court rejected the argument that the statutory term "shall" actually means "may." The court indicated that "[n]ot only is the word 'shall' unambiguous on its face, but the legislative history, which is controlling, supports the conclusion that withdrawal is mandatory" where substantial and material consideration of federal statutes other than the Bankruptcy Code is necessary to resolve the case or proceeding. *Id.* Indeed, the legislative history of 28 U.S.C. § 157(d) makes clear that when laws affecting interstate commerce "are material to resolution of the proceeding," withdrawal of the proceeding to the district court is mandatory. 130 Cong. Rec. § 6081 (daily ed. June 19, 1984) (remarks of Sen. DeConcini).

Similarly, in *American Telephone and Telegraph Company. v. Chateaugay Corp.,* the court held that where the issues in question require a "significant interpretation of federal laws

that Congress would have intended to have decided by a district judge rather than a bankruptcy judge[,] . . . [the] district court *does not have* discretion to deny a petition for withdrawal." 88 B.R. 581, 584 (S.D.N.Y. 1988) (emphasis added) (citing *United States of America v. Johns-Manville Corp. ("In re Johns-Manville Corp."),* 63 B.R. 600, 602 (S.D.N.Y. 1986) and *In re Combustion Equip. Assocs.,* 67 B.R. at 711)). *See also In re Cablevision S.A.,* 315 B.R. 818, 821 (S.D.N.Y. 2004) ("matters 'must be withdrawn under § 157(d) if they require the bankruptcy court to substantially interpret Federal statutes which affect interstate commerce.'") (quoting *City of New York v. Exxon Corp.,* 932 F.2d 1020, 1026 (2d Cir. 1991)). As the *American Telephone and Telegraph Company* court stated, the mandatory withdrawal provision of section 157(d) "assures litigants that under certain circumstances their assertion of a federally created right will be considered outside the narrow confines of a bankruptcy court proceeding by a district court, which considers laws regulating interstate commerce on a daily basis and is 'better equipped to determine them than are bankruptcy judges.'" 88 B.R. at 583 (quoting 1 Collier on Bankruptcy ¶ 3.01 at 3-53 (15th ed 1986)).

The very basis for federal environmental law is the Commerce Clause. *See Hodel v. Virginia Surface Mining & Reclamation Assoc.,* 452 U.S. 264, 282 n.4 (1981) ("[W]e agree with the lower Federal courts that have uniformly found the power conferred by the Commerce Clause broad enough to permit congressional regulation of activities causing air or water pollution, or other environmental hazards that may have effects in more than one State"). CERCLA, for instance, is "'rooted in the commerce clause' and clearly is the 'type of law [ ] Congress had in mind when it enacted the mandatory withdrawal provision.'" *In re Combustion Equip. Assocs.,* 67 B.R. at 713 (granting withdrawal of reference with respect to issue of whether post-bankruptcy CERCLA claim was discharged) (quoting *United States v. ILCO ("In re*

14

*ILCO*")), 48 B.R. 1016, 1021 (N.D. Ala. 1985)); *Johns-Manville*, 63 B.R. at 602 (granting

withdrawal of reference regarding whether post-petition CERCLA claim was covered by

automatic stay) (quoting *ILCO*, 48 B.R. at 1021).

The federal courts have consistently recognized that CERCLA affects interstate

commerce and that matters arising under CERCLA are subject to the mandatory withdrawal

provision of 28 U.S.C. § 157(d). *See, e.g., In re Dana,* 379 B.R. 449, 455-458 (S.D.N.Y. 2007)

(withdrawing reference, finding "undisputed" that CERCLA affects interstate commerce and

resolution of issue would require "careful and significant consideration of CERCLA"). For

example, in *ILCO*, the United States sought relief under provision of CERCLA and other

environmental statutes against debtors. *See* 48 B.R. at 1021. At the time the United States filed

suit, ILCO was undergoing a Chapter 11 bankruptcy reorganization. *Id.* The district court

concluded that mandatory withdrawal was appropriate because, to resolve the disputed matter,

the court had to consider and apply the relevant environmental statutes. *Id.* at 1021-1022; *see also*

*In re Combustion Equip. Assocs.,* 67 B.R. at 713; *Johns-Manville*, 63 B.R. at 602.[5]

## B. Resolution of the Debtors' Objections Requires a Significant Interpretation of CERCLA

Recently, in *In re Dana Corp.*, a district court in the Southern District granted the United

States' motion to withdraw the reference in a case involving, as here, complicated environmental

and bankruptcy issues. *See* 379 B.R. at 456-62. The *Dana* case involved (1) applicability of

joint and several liability, (2) whether EPA's response actions were inconsistent with the

National Contingency Plan, 40 C.F.R. Part 300, and (3) whether the debtor was entitled to an

"act of God" defense. *Id.* The *Dana* court granted the United States' motion to withdraw the

---

[5] Mandatory withdrawal applies to both core and non-core proceedings. *See ILCO,* 48 B.R. at 1020; *In re Lion Capital Group*, 63 B.R. 199, 203 (S.D.N.Y. 1985).

reference because the case both presented complex legal issues under CERCLA (*e.g.,* divisibility and equitable allocation defenses to joint and several liability) and required reconciling the competing goals of environmental and bankruptcy law.  The Court explained:

> [T]he issues at stake here involve a number of difficult legal issues, as well as complicated fact issues specific to CERCLA, that are outside the purview of the bankruptcy court's expertise.  Because of this and because the bankruptcy court, in addressing these issues, will be forced to confront the conflict between the underlying goals of CERCLA and those of the Bankruptcy Code, I am withdrawing the reference to the bankruptcy court of all proceedings related to the Government's claims . . . .

*In re Dana Corp.*, 379 B.R. at 461.

Similarly, in *United States v. Delfasco, Inc.,* the United States sought to withdraw the reference with respect to an adversary proceeding seeking, *inter alia*, to enforce a prepetition remediation order issued under RCRA against the debtor and a declaration that enforcement was not subject to the Bankruptcy Code's automatic stay.  *See* 409 B.R. 704, 705 (D. Del. 2009). Finding that adjudication of the adversary proceeding would require substantial and material interpretation of environmental laws, the *Delfasco* court concluded that withdrawal was required. *Id.* at 708 (reasoning that because "the Bankruptcy Court will be *required* to interpret environmental law," withdrawal is mandatory under 28 U.S.C. § 157(d)).

The Debtors' Objections in this case will raise equally substantial and difficult issues under environmental law, requiring consideration of CERCLA, other federal environmental statutes and, more broadly, resolution of a conflict between these statutes and the "fresh start" equitable principles of bankruptcy.  Accordingly, withdrawal of the reference is mandatory.[6]

---

[6] The Debtors' Objections to DTSC's and the Water Boards' proofs of claim do not explicitly raise issues of federal law, as the California Environmental Agencies issued orders to Debtors under state law.  Still, as discussed *supra* at 9, the underlying state statutes are similar to CERCLA.  Indeed, the statute relied upon by DTSC is the California counterpart to CERCLA, and incorporates many of CERCLA's definitions.  Accordingly, principles of uniformity, judicial

Footnote continued on next page

1.   **Disagreement Between the Parties As To the Applicability of the Second Circuit's *Chateaugay* Decision**

In order to adjudicate the Debtors' Objections, a court must first determine when a "right to an equitable remedy" under CERCLA and the analogous state statutes falls within the Code's definition of "claim." Ordinarily, where the right to equitable relief derives from a statute, the analysis of whether "[t]he injunctions alleged to give rise to dischargeable 'claims,' impose a remedy for performance breach that gives rise to a right of payment," *In re Chateaugay Corp.*, 944 F.2d at 1007, depends upon an analysis of the non-bankruptcy statute at issue. *See, e.g.*, *United States v. Apex Oil Co., Inc.*, No. 08-3433, 2009 WL 2591545, at *1-2 (7th Cir. Aug. 25, 2009) (analyzing language of RCRA to determine if breach of injunction issued under RCRA gave rise to right to payment); *In re Torwico Electronics, Inc.*, 8 F.3d 146, 151 (3d Cir. 1993) (analyzing state environmental law).

It is the position of the United States and the California Environmental Agencies, however, that the relevant standard in analyzing the dischargeability of a CERCLA injunction has already been established by the seminal decision of *In re Chateaugay Corp.*, 944 F.2d at 997. In *Chateaugay*, the Second Circuit, after analyzing the relevant provisions of CERCLA and the language of section 101(5) of the Bankruptcy Code, framed the relevant inquiry as whether the injunction in question was designed to end or ameliorate "current," "continued," or "ongoing pollution emanating" from hazardous wastes:

> These injunctions . . . frequently combine an obligation as to which
> the enforcing agency has an alternative right to payment with an

*Footnote continued from previous page*
economy and efficiency dictate that the Objections be heard together by the district court. *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1100 (2d Cir. 1993) (in deciding whether to permissibly withdraw the reference for "cause," courts should consider whether principles of, *inter alia*, efficiency and uniformity in the administration of the bankruptcy law would be served by withdrawal).

obligation as to which no such alternative exists. An injunction that does no more than impose an obligation entirely as an alternative to a payment right is dischargeable. . . . On the other hand, if the order, no matter how phrased, requires [the debtor] to take any action that ends or ameliorates current pollution, such an order is not a "claim" under the [Bankruptcy] Code.

. . . [I]t is the distinction we believe is made by the "claim" definition of the Code. EPA is entitled to seek payment if it elects to incur cleanup costs itself, but it has no authority to accept a payment from a responsible party as an alternative to continued pollution. . . . *Since there is no option to accept payment in lieu of continued pollution, any order that to any extent ends or ameliorates continued pollution is not an order for breach of an obligation that gives rise to a right of payment and is for that reason not a "claim."*

*Id.* at 1008 (emphasis added). The Second Circuit therefore concluded that a cleanup order issued under CERCLA "that accomplishes the dual objectives of removing accumulated wastes and stopping or ameliorating ongoing pollution emanating from such wastes is not a dischargeable claim." *Id.*

The Debtors disagree that *Chateaugay*'s "ongoing pollution" standard governs in this matter, arguing that the Second Circuit's holding was limited to debtor owned property. *See* Debtors' Mem. at 27-31. The United States and the California Environmental Agencies, in contrast, believe *Chateaugay* is clearly controlling, as nothing in *Chateaugay*'s analysis of the intersection of CERCLA and section 101(5) of the Bankruptcy Code supports distinguishing between debtor owned and non-debtor owned sites. Rather, section 106(a) creates a single standard for the issuance of injunctive obligations: "that there be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility." 42 U.S.C. § 9606(a). The United States and the California Environmental Agencies further argue that nothing in the language of CERCLA indicates that the EPA could accept payment in lieu of continued pollution at non-

18

Debtor owned sites, yet is constrained from accepting such payment at debtor owned property ---
which was the basis for the Second Circuit's holding in *Chateaugay*.

The Debtors, in contrast, primarily assert that because CERCLA purportedly "affords the
Government Parties an alternate right to payment" through the mechanism of a cost recovery
action brought under section 107 of CERCLA, injunctions issued under section 106 of CERCLA
are dischargeable claims. Debtors' Mem. at 19-20; *see also id.* at 3-5 (describing CERCLA
statutory scheme); *id.* at 32-33 (distinguishing Third Circuit case of *Torwico* on ground that the
statute at issue there did not give rise to alternate right to payment).

At bottom, however, whether a court sides with the United States and the California
Environmental Agencies or with the Debtors, there can be no dispute that the resolution of this
core disagreement between the parties – *i.e.*, whether *Chateaugay's* "ongoing pollution" standard
applies to CERCLA injunctions issued with respect to non-Debtor owned sites at the time of
bankruptcy – will nonetheless require substantial and material consideration of section 106 of
CERCLA. *See Bear Stearns Sec. Corp. v. Gredd*, No. 01-CV-4379, 2001 WL 840187, at *4
(S.D.N.Y. July 25, 2001) (a district court "need not evaluate the merits of the parties' positions"
on the substantive issues when deciding whether mandatory withdrawal is required as "[i]t is
sufficient to note that answering [the] question will require [the district court] to interpret the
various provisions of the [non-bankruptcy federal statute] relied upon by the moving party . . .
regardless of whether [the district court] ultimately find[s the non-bankruptcy statute] to be
dispositive."). Accordingly, withdrawal of the reference is mandated under section 157(d).

Moreover, if the Court were to conclude, as Debtors urge it to do, that *Chateaugay* is
limited to debtor-owned sites, the Court's consideration of CERCLA would not be at an end.
The Court would still need to engage in substantial and material consideration of CERCLA to

19

resolve Debtors' Objections. Indeed, Debtors do not contend otherwise. In the Memorandum in support of their Objections, before they even describe what they see as the limited scope of *Chateaugay*, Debtors begin with an analysis of environmental law. The very first section of their statement of facts is entitled "CERCLA Framework and Process," Debtors' Mem. at 3, and Debtors go on to argue that each injunctive obligation at issue here is dischargeable in light of "the relevant statutory scheme" under environmental law, including CERCLA, *id.* at 19.

Debtors' reliance on environmental law, though not their interpretation of it, is consistent with court decisions that have engaged in analyses of environmental statutes to determine whether injunctive obligations at third party sites are "claims" subject to discharge. *See, e.g., Torwico*, 8 F.3d at 151 & n.7 (the injunctive liability at issue was not dischargeable because, under New Jersey environmental law, it "runs with the waste"; it is a "statutory obligation attached to hazardous waste"). *See also Apex*, 2009 WL 2591545, at *2 (injunctive liability under RCRA section 7003, 42 U.S.C. § 6973, is non-dischargeable because that statutory section does not authorize monetary relief).

Indeed, if, as Debtors contend, *Chateaugay* applies only to debtor-owned sites, then the Court here would need to engage in the same analysis of CERCLA as in *Chateaugay*, only with respect to non-debtor-owned sites. The Court would have to consider whether CERCLA injunctive obligations at third party sites "impose a remedy for performance breach that gives rise to a right to payment." *Chateaugay*, 944 F.2d at 1007. *See also* 11 U.S.C. § 101(5) ("claim" includes a right to an equitable remedy if breach of performance "gives rise to a right to payment"). More specifically, the Court would have to consider whether CERCLA gives EPA an option at third party sites that it does not have at debtor-owned ones – an "option to accept payment in lieu of continued pollution." *Chateaugay*, 944 F.2d at 1008. As noted above, the

20

Government parties contend that *Chateaugay* has already answered that question in the negative, reaching the same conclusion with respect to both debtor- and non-debtor-owned sites. But to the extent the question remains open as to the latter category sites, the Court here faces an issue of first impression which can only be answered through substantial and material consideration of CERCLA. Accordingly, withdrawal is mandatory.

### 2.    Application of *Chateaugay*'s "Ongoing Pollution" Test Requires Substantial Consideration of Substantive Environmental Laws

Assuming that *Chateaugay* controls the Court's analysis of the Debtors' Objections, resolution of the merits of the Debtors' Objections will turn on whether, for each of the non-Debtor owned sites for which the Debtors have obligations to conduct remediation or removal operations under section 106(a) of CERCLA, those operations were designed to "end[], or ameliorate[] current pollution." 944 F.2d at 1008. The *Chateaugay* court provided no guidance about the meaning of "current pollution," nor has the Second Circuit or any other court in this district yet to interpret that standard. Since resolution of this question poses novel questions, the reference should be withdrawn. *Bear, Stearns Sec. Corp.,* 2001 WL 840187, at *2-4 (S.D.N.Y. July 25, 2001). ("[W]here matters of first impression are concerned," or "arguably novel," "'the burden of establishing a right to mandatory withdrawal is more easily met.'").

The starting point for any analysis of whether pollution continues to emanate from hazardous substances must be the body of environmental law created by CERCLA. As discussed *supra* at 8, section 106(a) establishes that injunctive relief or administrative orders to abate "an actual or threatened release of a hazardous substance" where there may be an imminent and substantial endangerment to the public health or welfare or the environment." 42 U.S.C. § 4606(a). The "ongoing pollution" referenced in *Chateaugay*, if not synonymous with the release of hazardous materials proscribed under section 106(a), must at the least be informed by that

provision. Each of the relevant terms in section 106(a) is given substance by CERCLA, including the definitions of "hazardous substance," 42 U.S.C. § 4601(14), "environment," *id.* § 4601(8), and "release," *id.* § 9601(22). *See, e.g.*, *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1200-01 (2d Cir. 1992) (holding that CERCLA's definition of "hazardous substances" broadly encompasses substances regardless of the quantity or concentration or the source of the waste).

Moreover, whether the "imminent and substantial endangerment" test has been met will also be relevant to the inquiry of whether a particular injunction seeks to abate an ongoing threat of pollution. Courts ordinarily assess whether there is "imminent and substantial endangerment" within the meaning of section 106 based on the administrative record developed by EPA through its site investigation and remedy selection process. *See, e.g.*, *United States v. E.I. du Pont de Nemours & Co.*, Inc., 341 F. Supp. 2d 215, 248 (W.D.N.Y. 2004) (citing 42 U.S.C. § 9613(j)(i)); *see also B.F. Goodrich Co. v. Murtha*, 697 F. Supp. 89, 96 n.9 & 97 (D. Conn. 1988) (citing EPA's Record of Decision and Feasibility Study Report). In making endangerment determinations, courts give consideration to "'[a] number of factors, including the quantities of hazardous substances involved, the nature and degree of their hazards, or the potential for human or environmental exposure.'" *E.I. du Pont*, 341 F. Supp. 2d at 247 (quoting *United States v. Conservation Chem. Co.*, 619 F. Supp. 162, 194 (W.D. Mo. 1985)).

Accordingly, any application of the "ongoing pollution" standard to the unique facts presented at each of the non-Debtor owned sites implicated by the Debtors' Objection will require substantial and material consideration of CERCLA. Therefore, withdrawal of the reference is mandatory.

3.     **Adjudication of the Debtors' Objections Will Require Consideration of
       Whether the Objections are Barred by CERCLA's Ban on Pre-
       enforcement Review**

The Debtors' Objections require this Court to narrowly construe yet another provision of

CERCLA – section 113(h) (42 U.S.C. § 9613(h)), which prohibits pre-enforcement review of

any EPA actions taken under CERCLA.

The Debtors' Objections seek to discharge injunctive liability with respect to two

categories of sites – (i) those sites listed in the Proofs of Claim for which the EPA has issued

administrative orders or has entered into consent decrees with the Debtors; and (ii) those sites for

which the EPA has yet to initiate an enforcement action pursuant to section 106(a) of CERLA.

With respect to both site categories, the Debtors' Objections would encompass sites for

which the EPA or state agencies have yet to make a determination of liability, have yet to choose

a remedy, and have yet to choose the statute pursuant to which they will seek to enforce federal

or state law.  The relief sought by the Debtors' Objections – a determination that their injunctive

liabilities for an unknown number of sites are dischargeable "claims" under the Bankruptcy Code

– creates a direct conflict with section 113(h) of CERCLA, *see* 42 U.S.C. § 9613(h), which

precludes pre-enforcement review of EPA actions.

Section 113(h) prohibits the courts from reviewing "any challenge" to actions taken by

the EPA under sections 104, 106 or 107 of CERCLA, including any orders issued by the EPA

pursuant to section 106, except when, *inter alia*, an action is brought by the EPA pursuant to

section 106 of CERCLA to enforce an administrative order or to compel a remedial action.  *See*

42 U.S.C. § 9613(h); *see also Farmers Against Irresponsible Remediation (FAIR) v. EPA,* 165 F.

Supp. 2d 253, 259-60 (N.D.N.Y. 2001) (CERCLA section 113(h) prohibits courts from

adjudicating pre-enforcement claims relating to any decisions made by the EPA in connection

with removal or remedial actions). Resolution of this issue requires significant interpretation of CERCLA, and should be resolved by the district court.

As the plain meaning of the expansive phrase "any challenge" suggests, section 113(h) applies to any action where the relief sought would interfere with EPA's implementation of a CERCLA cleanup. *See* 42 U.S.C. § 9613(h). This straightforward interpretation represents the prevailing judicial reading of this CERCLA provision. *See, e.g., Broward Gardens Tenants Ass'n v. EPA*, 311 F.3d 1066, 1072 (11th Cir. 2002) ("A suit challenges a remedial action within the meaning of 113(h) if it interferes with the implementation of a CERCLA remedy."); *Costner v. URS Consultants*, 153 F.3d 667, 675 (8th Cir. 1998) ("A lawsuit may . . . be considered a 'challenge' under section 113(h) when the relief sought 'would constitute the kind of interference with the cleanup plan that Congress sought to avoid or delay by the enactment of Section 113(h).'"); *Clinton County Comm'rs v. EPA*, 116 F.3d 1018, 1023 (3d Cir. 1997) (en banc) ("Congress intended to preclude any judicial involvement in EPA removal and remedial actions until after such actions are complete."); *Schalk v. Reilly*, 900 F.2d 1091, 1097 (7th Cir. 1990) ("[C]hallenges to the procedure employed in selecting a remedy nevertheless impact the implementation of the remedy and result in the same delays Congress sought to avoid by passage of the statute; the statute necessarily bars these challenges.").

If the Debtors' Objections succeed, the resulting discharge of "claims" would effectively enjoin the United States from exercising its police and regulatory authority to bring an enforcement action under section 106 of CERCLA, in many instances before any such action would have been considered or a remedy even selected. The United States contends that section 113(h) prohibits this kind of court review of the EPA's pre-enforcement activity. Accordingly,

because resolution of this threshold jurisdictional question will require substantial and material

consideration of CERCLA, this Court should withdraw the reference from the Bankruptcy Court.

### C. Resolution of the Debtors' Objections Would Require Addressing Questions of First Impression as to Whether There Is a "Right of Payment" under Federal Environmental Statutes Other than CERCLA

In their Objections, the Debtors seek an adjudication of the dischargeability of

injunctions and administrative orders at an unknown number of other non-Debtor owned sites at

which the Debtors may potentially be liable to perform injunctive obligations under federal and

state environmental laws other than CERCLA.

For each of these unknown sites, there are a number of environmental statutes upon

which the Debtors may be liable, each of which has a different statutory scheme. For example,

these non-Debtor owned sites may well be subject to regulation under the RCRA (42 U.S.C. §§

6901-6992k), the Clean Water Act (33 U.S.C. §§ 1251-1387), the Clean Air Act (42 U.S.C. §§

7401-7671q), as well as various other federal and state environmental laws including

California's Hazardous Waste Control Law (Cal. Health & Safety Code § 25100 *et seq.*)[7] and

California's Porter-Cologne Water Quality Control Act (Cal. Wat. Code §§ 13000 *et seq.*).

Before it could grant the sweeping relief requested by the Debtors, a court would be required to

conduct an in-depth examination of the cost recovery mechanism of each statute to determine

whether the statute authorizes monetary relief as a remedy for the breach of injunctive

obligations. Yet many of these statutes by their terms do not provide such an alternate right to

payment. For example, the Debtors themselves concede that RCRA's statutory scheme does

"not afford the government an alternate right to payment." Debtors' Mem. at 32 (describing

holding of *Apex*, 2009 WL 2591545). In *Apex*, the Seventh Circuit examined RCRA, which

---

[7] This statute is California's counterpart to RCRA.

formed the basis of the Government's equitable claim, to conclude that the statute "does not

entitle a plaintiff to demand, in lieu of action by the defendant that may include the hiring of

another firm to perform a cleanup ordered by the court, payment of clean-up costs. It does not

authorize *any* form of monetary relief." 2009 WL 2591545 at *2.

Accordingly, to the extent that the Debtors may have, or incur, injunctive obligations

issued under statutes other than CERCLA, the Debtors' Objections requires the Court to consider

the cost recovery provision of each such federal and state environmental statute potentially

applicable to the non-Debtor owned sites identified by the Debtors. These statutes are far afield

from the Bankruptcy Court's area of expertise. *See In re Horizon Air, Inc.,* 156 B.R. 369, 374

n.5 (N.D.N.Y. 1993) ("[C]ases construing § 157(d) make clear that when a bankruptcy court is

called upon to interpret statutes outside its realm of expertise, the district court is required to

remove the reference.").

### D. Resolution of the Debtors' Objections Requires Consideration of the Competing Objectives of Environmental and Bankruptcy Law

Withdrawal of the reference is required in actions presenting issues at the intersection of

environmental and bankruptcy laws. *See, e.g., In re Dana Corp.,* 379 B.R. at 461; *Nat'l Gypsum

Co.,* 134 B.R. 188, 192 (N.D. Tex. 1991); *ILCO,* 48 B.R. at 1021. The Debtors complain that, if

CERCLA injunctive obligations at issue are not dischargeable, the United States would be given

priority treatment over unsecured creditors, "a result completely at odds with the overarching

goals of the Bankruptcy Code" to provide the Debtors a fresh start and to treat similarly situated

creditors similarly. Debtors' Mem. at 2-3. Thus, the Debtors are relying on equitable principles

of bankruptcy law to limit application of CERCLA.

When enacting CERCLA, however, Congress created broad liability, reflecting the

principle that those responsible for creating hazardous conditions should bear the burden of

26

cleanup. *See B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1198 (2d Cir. 1992). As noted above, *supra* at 4, 14, this conflict is well-recognized. The Second Circuit described it as arising "at a basic level, since the goal of CERCLA-cleaning up toxic waste sites promptly and holding liable those responsible for the pollution-is at odds with the premise of bankruptcy, which is to allow debtors a fresh start by freeing them of liability." *In re Combustion Equip. Assoc.,* 838 F.2d 35, 37 (2d Cir. 1988).

Here, the Debtors' Objections signal this conflict between CERCLA and bankruptcy law, by "attempt[ing] to invoke the equitable principles and goals of bankruptcy" to limit application of CERCLA. *In re Dana,* 379 B.R. at 459. The responsibility to navigate and harmonize the conflicts between bankruptcy and environmental law lies with the district court. As discussed, *supra* at 14-15, in *In re Dana,* the district court granted the United States' motion to withdraw the reference because the case presented complex legal issues under CERCLA (*e.g.,* divisibility and equitable allocation defenses to joint and several liability) which required reconciling the competing goals of environmental and bankruptcy law. *See* 379 B.R. at 461. In fact, courts in this District have, on several occasions, faced the conflict between CERCLA's policy of comprehensive environmental cleanups and the Bankruptcy Code's policy of equity and discharges of debtors to give them a fresh start. In these cases, the district courts have decided such issues in favor of CERCLA. *See, e.g., American Tel. & Tel.*, 88 B.R. at 587 ("The AT&T Complaint raises important issues of Federal environmental policy, which can at times take precedence over seemingly contrary provisions of the Bankruptcy Code"); *In re Combustion Equip. Assocs.,* 67 B.R. at 713 ("[T]he determination [of when a CERCLA claim accrues is] . . . an important question with economic and environmental ramifications reaching beyond the bankruptcy arena."); *Johns-Manville,* 63 B.R. at 602 ("The question for adjudication

27

in these adversary proceedings requires not only . . . significant interpretation of the CERCLA statute, but, in addition, assessment of the relationship of such CERCLA claims to the automatic stay [provisions] of the Bankruptcy Code."). In each of these cases, resolution of the potential conflict required a balancing of the statutes' competing objectives, which, under § 157(d) must be performed by a district court. *See, e.g., American Tele. & Tel.*, 88 B.R. at 588 (withdrawal of reference was appropriate where "[r]esolution of the issues presented by the [plaintiffs' adversary] . . . Complaint will require significant interpretation of CERCLA and consideration of the ways in which the values of environmental preservation it was enacted to protect can be reconciled with the familiar concerns of the Bankruptcy Code."). Similarly, the Debtors' Objections' wholesale attack on the EPA's enforcement authority warrants district court adjudication of these important, non-bankruptcy issues.

## II. THIS COURT SHOULD WITHDRAW THE REFERENCE AS A MATTER OF DISCRETION

In the alternative, this Court should withdraw the reference as a matter of discretion pursuant to § 157(d), which provides, in relevant part, that "[t]he district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d) (emphasis added). Although § 157(d) does not define "cause," the Second Circuit has held that district courts should consider the following factors to determine if cause exists to withdraw the reference: "(1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors." *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993). Applying the *Orion* factors warrants permissive withdrawal of the reference:

28

*First*, the Debtors' Objections raise substantial issues under CERCLA that would exist independently of the bankruptcy code, and because the claims arise under CERCLA, these issues are not the type that "could arise only in the context of a bankruptcy case." *Id.* Even if the Court disagrees on this point, "[w]hile the question whether the proceeding sought to be withdrawn is core or non-core is significant, it is not dispositive. A core proceeding . . . may be withdrawn 'based on a finding by the Court that the withdrawal of reference is essential to preserve a higher interest.'" *In re Parmalat Finanziaria S.p.A.*, 320 B.R. 46, 50 (S.D.N.Y. 2005) (citations omitted); *see also Mishkin v. Ageloff,* 220 B.R. 784, 800 (S.D.N.Y.1998) (finding that if a matter is "core" weighs against withdrawal of the reference, but is not dispositive, because "[i]n the final analysis, the critical question is efficiency and uniformity").

*Second*, permissive withdrawal would be an appropriate use of judicial resources because the district courts have an expertise in handling complex Federal environmental statutes such as CERCLA. There is therefore no efficiency involved in having the bankruptcy court decide any of the issues surrounding the CERCLA injunctive claims in the first instance since any decision by the bankruptcy court on a core issue is appealable as a matter of right to this Court, 28 U.S.C. § 157(c)(1), which reviews a bankruptcy court's legal findings *de novo, see Shugrue v. Air Line Pilots Ass'n (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 988–89 (2d Cir. 1990). Given the complexity and importance of the CERCLA question at issue here, issue, an appeal to the district court would be a given.

*Third*, resolution of these CERCLA issues in the district court would not unduly delay the proceedings. This Court can impose a briefing and discovery schedule to resolve the CERCLA issues that would take into account any claim that time is of the essence. Accordingly,

permissive withdrawal will prevent unnecessary cost and delay to the parties by withdrawing the reference.

*Fourth*, withdrawal of the reference will not hinder uniformity in bankruptcy administration.  The United States and the California Environmental Agencies seek to withdraw the reference as to resolution only of the CERCLA issues.  This "limited withdrawal of the reference as to this single issue pose[s] no threat to the uniformity of the administration of the estate." *In re Burger Boys, Inc.,* 94 F.3d at 762.  Although the Debtors' CERCLA injunctive obligations are an important factor in the underlying bankruptcy case, the administration of the estates is not dependant on their resolution.

*Finally*, there is no evidence of forum shopping on behalf of the Government Parties.  As discussed above, if this Court were to deny this motion, any appeal of the bankruptcy court's ruling with respect to CERCLA ultimately would be appealed to this Court.

Accordingly, the *Orion* factors favor permissive withdrawal of the reference as a matter of the Court's discretion.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion of the United States and the California Environmental Agencies for withdrawal of the reference pursuant to 28 U.S.C. § 157(d).

Dated:      September 30, 2009
            New York, New York

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney for the
                              Southern District of New York

                         By: _B Cowart_____

                              JEANNETTE A. VARGAS
                              BRANDON COWART
                              ALICIA SIMMONS
                              Assistant United States Attorney
                              Attorneys for the United States of America


                              EDMUND G. BROWN JR.
                              Attorney General of California
                              RICHARD J. MAGASIN
                              Supervising Deputy Attorney General
                              MARILYN H. LEVIN
                              NOAH GOLDEN-KRASNER
                              Deputy Attorneys General


                         By: _Noah Golden-Krasner_

                              NOAH GOLDEN-KRASNER
                              Deputy Attorney General
                              Attorneys for (ADD) California State Water
                              Resources Control Board and California Regional
                              Water Quality Control Board, Los Angeles Region


                              EDMUND G. BROWN JR.
                              Attorney General of California
                              KEN ALEX
                              Senior Assistant Attorney General
                              MARGARITA PADILLA
                              Supervising Deputy Attorney General


                         By: _Margarita Padilla_

                              MARGARITA PADILLA
                              Supervising Deputy Attorney General
                              Attorneys for California Department of Toxic
                              Substances Control


                                   31